UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MAYBELLE Z. SMITH,<br>On behalf of Themselves and All Others<br>Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY,<br>d/b/a CNA INSURANCE,<br><br>Defendant. | Case No. 1:16cv616<br><br>Judge Michael R. Barrett |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 11). Plaintiffs have filed a response (Doc. 12) and Defendant has filed a reply (Doc. 15).

**I.    BACKGROUND**

For purposes of this motion, the facts alleged in Plaintiffs' Complaint are accepted as true. Plaintiffs Maybelle Smith and Mary Agnus Fleming bring this action on behalf of themselves and others similarly situated.

In the late 1980s, Plaintiffs each separately purchased long-term care policies from Defendant. (Doc. 1, PageID 3 at ¶¶ 7, 12). In July 2015, Plaintiff Smith could no longer live independently and moved into a retirement community in Cincinnati, Ohio. (Id. at ¶ 9). Similarly, in December 2012, Plaintiff could no longer live independently and moved into an assisted living unit in Palm Harbor, Florida. (Id. at ¶ 14).

Plaintiffs' long-term care policies state in relevant part as follows:

1

> We will pay You the Convalescent Care Benefit for each day You require Convalescent Care in a Convalescent Care Facility. Benefits begin after the Elimination Period and are payable up to the Maximum Benefit Period for Convalescent Care. In order for Convalescent Care benefits to be payable Your confinement must meet fully all of the conditions listed below:
>
> > (a) within thirty days following discharge from Hospital confinement of at least three consecutive days, You are admitted to a Convalescent Care Facility as a result of the same injury or Sickness which caused Your Hospital confinement…

(Doc. 12-1, PageID 148; Doc. 12-2, PageID 167).[1]

Both Plaintiffs, having paid their annual premiums each year since their respective effective dates, filed claims under their long-term care policies. (Id. at ¶¶ 10, 15). Both were denied covered based upon the 3-day hospital confinement language. (Id.).

In 1993, Ohio Revised Code § 3923.44 went into effect. (Id. at ¶ 31). Relevant to this case, the statute provides that "no long-term care insurance policy shall do any of the following…[c]ondition eligibility for any institutional benefits on a requirement of prior hospitalization." Ohio Rev. Code § 3923.44(E)(1)(a). The Florida legislature passed a similar law prior to 1998, which provides that "[a] long-term care insurance policy may not be delivered or issued for delivery in this state if the policy [c]onditions eligibility for any benefits on a prior hospitalization requirement…" Florida Statue Section § 627.9407(5).

Relying on these and other similar state statutes, Plaintiffs argue Defendant is prohibited by law from denying coverage based upon the 3-day hospitalization requirement. Accordingly, they bring the following claims: 1) breach of contract; 2) declaratory judgment; 3) bad faith; 4)

---

[1] The Court notes that Plaintiffs failed to attach the operative long-term care policies to their Complaint. Defendant therefore attached copies to its motion. Plaintiffs concede it is proper for the Court to consider the policies on a motion to dismiss, but attach different copies to their response, arguing materials were missing from Defendant's submission. Because this is a motion to dismiss, and the Court must take the allegations of the Complaint as true, making all reasonable inferences in favor of Plaintiffs, the Court cites to Plaintiffs' copies of the long-term care policies.

state unfair claims settlement practices act; 5) unjust enrichment; and 6) punitive damages. Defendant moves to dismiss the Complaint in its entirety.

## II. STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotations omitted). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

Defendants argue that the state laws cited and relied upon by Plaintiffs went into effect well after the effective dates of the policies and thus, do not apply to the policies at issue. Because Plaintiffs did not meet the 3-day hospitalization requirement, Defendant asserts their claims were properly denied.

Plaintiffs concede they did not meet the 3-day hospitalization requirement. They counter, however, that the respective state laws do apply because each time Plaintiffs paid their annual

premiums they effectively renewed their contracts with Defendant. Accordingly, because the new contracts were issued after the effective dates of the state laws, Plaintiffs argue the 3-day hospitalization requirement is illegal, and cannot form the basis for the denial of a claim. Both parties cite to Ohio law in support of their arguments related to Plaintiff Smith's claims and to Florida law in support of their arguments related to Plaintiff Fleming's claims.[2]

The policies issued to Plaintiffs provided they were guaranteed renewable for life as long as the premiums were paid each year. (Doc. 12-1, PageID 144). Defendant was further prohibited from making changes to the policies without Plaintiffs' consent. (Id.). However, "[Defendant] c[ould] change the premium rate for the policy, but only if [Defendant] g[a]ve [Plaintiffs] 30 days prior written notice and [Defendants] change[d] the premium rate for everyone who ha[d] this policy form in [Plaintiffs'] rating group in [Plaintiffs'] state[s]." (Id.). Because the respective state laws compel different results, each Plaintiff's policy is addressed separately.

### A. <u>Plaintiff Smith</u>

Generally, statutes are prospective in nature, unless the legislature expressly makes the same retroactive. *See e.g.* Ohio Rev. Code § 1.48. The Ohio Administrative Code answers the question of whether Ohio Rev. Code § 3923.44 is retroactive; plainly, it is not. OAC § 3901-4-01(C) ("Applicability. Except as otherwise specifically provided, this rule applies to all long-term care insurance policies…delivered or issued for delivery in this state *on or after the*

---

[2] Plaintiffs make a cursory argument that Illinois law, where Defendant is domiciled, might apply. However, they cite Ohio and Florida law in their response, and do not convince the Court a choice of law analysis is necessary.

*effective date* by insurers…") (emphasis added).[3]  Accordingly, the law is not retroactive, as it expressly states that it is applicable to policies on or after the effective date of the statute.

Having determined Ohio Rev. Code § 3923.44 is not retroactive, both parties agree the issue before the Court is a narrow one; that is, whether the annual policy renewals constitute one single continuing contract, or result in separate and distinct contracts. Under Ohio law, "statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." *Benson v. Rosler,* 19 Ohio St.3d 41, 44 (1985). The renewal of an insurance policy generally represents a new contract, but such a determination depends on the language of the instrument itself. *Francis v. McClandish*, 4th Dist. Case No. 98CA21, 1999 WL 266680, *7 (Ohio App., Apr. 19, 1999).

In *Benson*, the Ohio Supreme Court held that the policies at issue were term policies rather than continuing policies because they were written for specific periods of six months, and were renewable for additional terms at the option of the insuring company. *Id.* Plaintiff Smith argues the court's holding in *Benson* and its progeny support her position that the policy was renewed annually. She argues there is language in the policy pertaining to the policy term, renewal of coverage, subsequent premiums, and superseding laws and thus, Ohio Rev. Code § 3923.44 applies. The Court disagrees for several reasons, and will address each of Plaintiff's arguments in turn.

To begin, "[p]olicies written for specific periods may be construed as term policies rather than continuing policies." *Francis*, 1999 WL 266680 at *8. In *Francis*, the court found each renewal constituted a new insurance contract because the declarations page described the policy

---

[3] "This regulation is issued pursuant to the authority vested in the superintendent under sections…3923.44…" OAC § 3901-4-01.

period as running from January 10, 1995 to August 30, 1995. *Id.* Thus, the court reasoned that particular policy was effective for that particular period of time and no other. *Id.* Similarly, in *Barry v. The Cincinnati Ins. Cos.*, the policy period had a specific start date and end date – August 11, 1998 to August 11, 2001. 10th Dist. No. 01AP-1437, 2002 WL 31087264, *4 (Ohio App. Sept. 19, 2002); *See also Dixon v. Prof. Staff Mgmt.*, 10th Dis. No. 01AP-1332, 2002 WL 2005689 (Ohio App. Sept. 3, 2002) (finding the policy period began and ended at midnight on May 21 for twelve months). Here, the policy term has an effective start date of February 25, 1988, but not an end date. (Doc. 12-1, PageID 146). Rather, the policy term is "annual." (Id.). Accordingly, the cases cited by Plaintiff are distinguishable.

Related to Plaintiff's argument with respect to policy terms, she also highlights specific language in the premium rider – specifically, that the "rider takes effect…and *ends* at the same time as the policy to which it is attached" – for the proposition that the policy does indeed have an end date. (Doc 12-1, PageID 151). However, a plain reading of the policy indicates that the policy ends *only* if Plaintiff declines to pay her premium. Otherwise, the policy remains in effect. Thus, unlike in *Barry*, *Francis*, and *Dixon*, Plaintiff's policy does not have a specific end date that would oblige the Court to find the existence of separate and distinct contracts.

Next, Plaintiff argues the renewal language in the policy makes it clear each annual policy term constitutes a new contract. Notably, in *Benson*, the option to renew the contract was in the insurance company's control – not the insured's. *Benson*, 19 Ohio St.3d at 44. Thus, by the insurance company opting not to terminate the contract each renewal period, it was effectively choosing to renew the contract. The policy in *Gibbons* likewise gives the insurer the option not to renew the policy. *Gibbons*, 2002 WL 31087264 at *4. ("[T]he policy specifies…'that [w]e may elect not to renew this policy.'")

Here, Defendant did not have control over whether the policy was renewed as long as the premiums were paid. To the contrary, only Plaintiff could choose whether to renew or cancel the policy. Defendant persuasively argues this fact is significant because if each renewal constituted a new contract, the insurer could choose not to provide insurance to the insured, even if the policyholder had dutifully paid premiums for years. In other words, entering into one continuing contract provides protections to the insureds they would not otherwise be entitled.

Third, Plaintiff argues language in the policy regarding premiums supports her position. Specifically, Plaintiff points to the premium adjustment rider, contending that, at the very least, this constituted a new contract. With respect to premiums, the original policy states as follows:

> **WE CAN CHANGE YOUR PREMIUM ONLY AS DESCRIBED BELOW**
>
> We can change the premium rate for the policy, but only if We give you 30 days prior written notice and We change the premium rate for everyone who has this policy form in Your policy rating group in Your state.

(Doc. 12-1, PageID 144). Thus, the original policy contemplated an increase in premium payments, and the premium adjustment rider provides the required prior written notice of such an increase. (Id. at PageID 155). While Plaintiff argues the rider indicates the premium adjustment was "hereby agreed" to by Plaintiff, Plaintiff did not sign the rider indicating that she agreed to an adjustment separate and apart from the terms in the original policy. Moreover, Plaintiff was never issued a new policy number, even when Defendant opted to increase her premium. Therefore, there is no indication that one policy replaced another policy simply because the premium was paid. *See Francis*, 1999 WL 266680 at *8. This further supports the conclusion that the contract was one continuing policy.

Next, Plaintiff highlights an Economic and Trade Sanctions Endorsement to "debunk the notion espoused by defendant that no law enacted after the original issuance of her policy could

7

possibly be applied to her." (Doc. 12, PageID 136). Defendant counters that it is not it who determines whether trade sanctions apply to a policyholder, but rather, the United States government. The Court agrees, and finds that whether the terms of a policy, and consequently the parties to a policy, are subject to certain state laws is not analogous to the imposition of trade sanctions on a policyholder.

Finally, the Court is persuaded by a federal court's analysis of this particular statute applying Ohio law. *Walker v. Conseco Servs., LLC*, N.D. Ohio No. 3:02-CV-7245, 2003 WL 403181 (N.D. Ohio Feb. 24, 2002). The court in *Walker*, analyzing the same Ohio cases cited by the parties here, concluded that the long-term care policy was not subject to the requirements of the Ohio Administrative Code because premium payments constituted a continuation of the original policy. *Id.* at *6. Plaintiff argues the facts in *Walker* are distinguishable because that case involved a lapsed policy, rather than a prior hospitalization requirement. The specific facts, however, are not relevant to the Court's conclusion, particularly when considering the court analyzed the same Ohio law. Moreover, the Court would be remiss if it did not note that each Ohio case cited by Plaintiff is factually distinguishable from the case at bar. In fact, no case cited by Plaintiff analyzed the issue specific to a long-term care policy. Accordingly, Plaintiff's argument is unavailing.

The Court is sympathetic to Plaintiff's position, and recognizes that in this case, one continuing contract does not benefit Plaintiff, a woman who paid her premiums for 25 years in the event she one day needed long term care. However, the Court declines to forge new legal ground under Ohio law that could strip future litigants of certain protections currently afforded under long-term care policies. "People purchase [long-term care insurance policies] to ensure coverage as they grow older and are more likely to need it. If a policy's premiums could be

increased, or if it could simply be cancelled as the insured got older, it would be of little use. Viewing each renewal of the policy as a new contract, however, would give an insurer the right to do exactly that." *Id.* at *6 (quoting *Haley v. AIG Life Ins. Co.*, 2002 U.S. Dist. LEXIS 1114, *10 (D.N.D. Jan. 24, 2002)). Considering the foregoing, the Court finds the Complaint as it relates to Plaintiff Smith fails to state a claim, as Ohio Rev. Code § 3923.44 is not applicable to her long-term care policy.

### B. Plaintiff Fleming

#### 1. Breach of Contract

Plaintiff Fleming's long-term care policy was effective as of May 1, 1989, and the policy term was annual. (Doc. 12-1, PageID 164). Plaintiff relies heavily on a decision from a Florida appellate court wherein the court found extensions of coverage under a policy similar to the one at issue here constituted a "renewal" of the contract. *Bell Care Nurses Registry, Inc. v. Continental Cas. Co.*, 25 So. 3d 13 (Fla Dist. Ct. App. 2009).

In *Bell*, the policy identified the term as semi-annual, and, like here, the policy was guaranteed renewable for life. *Id.* at 15, 17. Moreover, the language regarding premium rates provided as follows: "[w]e can change the premium rate for the policy, but only if We give You 31 days prior written notice and *We change the premium rate for everyone who has this policy form in Your policy rating group in Your state.*" *Id.* at 16. (Emphasis in original). The Court reasoned that "[b]ecause the decision to raise renewal rates was thus left in the hands of the insurer, so long as it provided insured's timely notification and treated holders of the same type of policies in the same manner," laws that went into effect from policy term to policy term were applicable. *Id.*

9

Defendant argues the decision in *Bell* is distinguishable, and urges the Court instead to follow a Pennsylvania court's decision following Pennsylvania law, and *Walker*, discussed *supra*, a federal district court applying Ohio law. (Doc. 11, PageID 65) ("Decisions such as *Walker* and *Yoder*, and not *Bell Care*, deal with the relevant "delivered or issued for delivery formulation."). Defendant makes two primary arguments, which are addressed out of order for ease of discussion.

First, Defendant argues that the court in *Bell* erroneously assumed that the insurer could have raised premium rates at its own discretion. It argues that is not true and that any rate increases are subject to Florida state approval. The Florida law cited by Defendant, however, simply requires insurers to file with the office any change in applicable premium rates. Section 627.410(6)(a) ("An insurer may not deliver, issue for delivery, or renew in this state any health insurance policy form until it has filed with the office a copy of every applicable rating manual, rating schedule, change in rating manual, and change in rating schedule; if rating manuals and rating schedules are not applicable, the insurer must file with the office applicable premium rates and any change in applicable premium rates.") Moreover, the renewal premium rates "shall be deemed approved upon filing with the office if the filing is accompanied by the most current approved loss ratio guarantee." Section 627.410(8)(b). While it also provides certain prohibitions with respect to rating practices, such prohibitions do not appear to be at issue here. Section 627.410(6)(d). Regardless, the fact that premium rates are subject to certain guidelines under Florida law, in the Court's view, does not change the fact that each year, Defendant can, at its own discretion, decide whether to raise premium rates. Nevertheless, the Court is not entirely persuaded by the analysis set forth in *Bell* as it relates to the renewal of contracts. Rather, for the

reasons discussed below, it is in the language of the Florida statute itself where Plaintiff's position finds a safe harbor.

Defendant argues that the statutory provision at issue in *Bell* applied to "policies issued or renewed on or after [October 1, 1988]", whereas the provision at issue here only applies to policies delivered or issued for delivery after the provision's effective date. (Doc. 11, PageID 65) (citing *Id.* at 17). The provision at issue in *Bell*, however, falls under the same Chapter of Florida law (Chapter 627. Insurance Rates and Contracts) and the same Part of Florida law (Part XVIII. Long-Term Care Insurance Policies) at issue in this case. Importantly, the scope of the provisions of this part "shall apply to long-term care insurance policies delivered or issued for delivery in this state…The provisions of this part *shall not apply to guaranteed renewable policies issued prior to October 1, 1988*. Section 627.9403. (Emphasis added). If provisions of this part do not apply to guaranteed renewable policies issued *prior* to October 1, 1988, it stands to reason that provisions of this part would apply to guaranteed renewable policies issued *after* October 1, 1988.[4] Defendant highlights the "delivered or issued for delivery language" while arguing the October 1, 1988 language does not apply.[5]

Indeed, based upon the language of the provisions governing long-term care policies, the Court is empowered to find that Plaintiff Fleming's policy, issued on May 1, 1989, falls within the scope of Section 627.9407, particularly at this early stage in the proceedings. Such a reading of the statute appears to conform with the legislature's intent.

---

[4] Defendant also cites to the Florida Administrative Code regarding the applicability and scope of long-term care policies, which states that the provisions "shall apply to such long-term care policies issued or renewed on or after the effective date of Chapter 69O-157." F.A.C. 69O-157.002(2). That regulation was adopted on May 17, 1989. However, the regulation cites as authority Section 627.9403. Thus, the Court resolves any conflict between the statute and the regulation in favor of the statute.

[5] The Court acknowledges that Section 627.9407 specifically includes such language, but the Court cannot ignore the legislature's chosen language with respect to the intended scope of the statute.

Considering the foregoing, drawing all reasonable inferences in favor of Plaintiff Fleming, the Court finds she has stated a claim for breach of contract under Florida law.

### 2. Equitable Relief Claims

Defendant argues Plaintiff's claims for injunctive and declaratory relief rise and fall with her breach of contract claim. (Doc. 11, PageID 68). Because the Court finds Plaintiff Fleming has stated a claim for relief under Florida law, the Court declines to dismiss Plaintiff's claims for equitable relief.

### 3. Bad Faith

Defendant argues Plaintiff's bad faith claim fails as a matter of law because there is no common law bad faith action in Florida. Rather, the only bad faith claim is statutory, yet Plaintiff does not cite Florida's bad faith statute. Plaintiff makes no argument to the contrary. Having reviewed Section § 624.155, the Court finds Plaintiff has failed to state a claim. She does not cite Florida's bad faith statute nor does she assert she has complied with the required notice to bring a claim under § 624.155(3)(a).

### 4. Unfair Claims Settlement Practices Act

The Court finds Plaintiff has stated a claim under the unfair claims settlement practices act as it relates to Plaintiff Fleming. The Court agrees with Defendant, however, that her claim is premature, as it requires a determination of coverage and contractual issues. *Hartford Ins. Co. v. Mainstream Const. Grp. Inc.*, 864 So.2d 1270, 1272 (Fla. Dist. Ct. App. 2004). Accordingly, the Court dismisses Plaintiff's claim without prejudice as premature.

### 5. Unjust Enrichment

Defendant argues Plaintiff's claim for unjust enrichment must fail because Plaintiff's allegations as to this claim relate to valid and enforceable contracts. *See e.g. 1021018 Alberta*

*Ltd. Netpaying, Inc.*, No.8:10-CV-568-T-27MAP, 2011 WL 1103635, *5 (M.D. Fla. Mar. 24, 2011). Again, Plaintiff makes no argument to the contrary. Upon review, the Court finds the alleged conduct asserted by Plaintiff to support her unjust enrichment claim is the same conduct governed by the long-term care policies. For example, the Complaint states: "Defendant has benefited from charging, collecting and retaining long-term care insurance premiums, and not paying policy benefits to which the Plaintiffs and the other Sub-Class members are entitled." (Doc. 1, PageID 16 at ¶ 84). The relief she seeks is the same relief she seeks in her breach of contract claim – wrongfully withheld benefits. (Id. at ¶ 85). Accordingly, Plaintiff's claim for unjust enrichment fails.

### 6. Punitive Damages

A claim for punitive damages is not an independent claim in Florida; rather, it is a remedy. *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So.3d 1219, 1221 (Fla. 2016). Moreover, as Defendant correctly asserts, Florida law provides "a substantive legal right not to be subject to a punitive damages claim [] until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." *Globe Newspaper Co. v. King*, 658 So.2d 518, 519 (Fla. 1995) (citations omitted). Because Plaintiff's bad faith claim is dismissed, so too is any reasonable basis for recovery of punitive damages.

### CONCLUSION

Consistent with the foregoing, Defendant's Motion to Dismiss (Doc. 11) is **GRANTED IN PART**. Accordingly, it is hereby **ORDERED**:

1. Plaintiff Smith's claims are **DISMISSED WITH PREJUDICE**;
2. Plaintiff Fleming's claims for bad faith, unjust enrichment, and punitive damages are **DISMISSED WITH PREJUDICE**;

3. Plaintiff Fleming's claim under the Unfair Settlement Practices Act is **DISMISSED WITHOUT PREJUDICE TO REFILING**;

4. Plaintiff's Fleming's claims for breach of contract, declaratory judgment, and injunctive relief remain.

**IT IS SO ORDERED.**

    _s/Michael R. Barrett_
Michael R. Barrett, Judge
United States District Court