**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Maybelle Z Smith et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:16-cv-00616 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Continental Casualty Company, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Continental Casualty Company's Motion for Summary Judgment. (Doc. 27). Plaintiff Mary A. Fleming[1] filed a Response (Doc. 33) and Defendant filed a Reply (Doc. 34).

### I.   BACKGROUND

On May 1, 1989, Plaintiff applied for and purchased long-term care insurance policy number 076296971 ("the Policy") from Defendant. (Doc. 12-2 at PageID 173-74). Plaintiff's application included a box titled "Prior Hospitalization" and an "X" mark in the corresponding "Yes" box. (*Id.* at PageID 174).

The Policy's first page states that that it is "guaranteed renewable for life," informs "premiums subject to change," and explains that

> We guarantee to renew Your policy as long as the premium is paid within
> the allowable time.
> We can make no change to Your policy without Your consent.

---

[1] Plaintiff Fleming died during the pendency of this litigation. (Doc. 18). With permission from the Court, Paul R. Daschbach Jr., the trustee of her estate, has been substituted as Plaintiff. (Doc. 20). For purposes of this Order, and to maintain uniformity with the parties' filings, the Court will refer to Plaintiff Fleming.

> We can change the premium rate for the policy, but only if We give You 31 days prior written notice and We change the premium rate for everyone who has this policy form in Your policy rating group in Your state.

*Id.* at PageID 162. The Policy Schedule lists: a long-term care benefit of $80 per day; a lifetime maximum benefit of seven years; an effective date of May 1, 1989; and a policy term of annual. *Id.* at PageID 164.

Part 2 of the Policy is titled "BENEFITS" and includes:

### LONG TERM CARE BENEFIT

> We will pay You the Long Term Care Benefit for each day You require Long Term Care in a Long Term Care Facility . . . In order for benefits to be payable, Your confinement must meet the conditions listed below:
>
> 1. within thirty days following discharge from a Hospital confinement of at least three consecutive days, You are admitted to, or placed on a waiting list for, a long Term Care Facility as a result of the same Injury or Sickness which caused Your Hospital confinement.
>
> 2. Your Injury or Sickness requires and must continue to require Long Term Care.

*Id.* at PageID 167. Part 6 of the Policy is titled "THE CONTRACT" and states

### ENTIRE CONTRACT AND CHANGES TO IT

> This policy is legal contract between You and Us. The policy, the application and any attached papers make up the entire contract. No one has the right to change any part of this policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our officers.

*Id.* at PageID 169. Part 6 also states

### CONFORMITY WITH STATE STATUTES

> If any provision of this policy is in conflict with the statutes of the state in which You reside on the policy Effective Date, the provision is automatically amended to meet the minimum requirements of the statute.

*Id.*

Plaintiff paid her annual premium each year. (Doc. 1). In December 2012, she could no longer live independently and moved into an assisted living unit named Stratford Court in Palm Harbor, Florida. (*Id.*, ¶ 14). Plaintiff admits she was not discharged from a hospital confinement of at least three consecutive days before she entered Stratford Court. (Doc. 1). Defendant admits that a February 20, 2013 letter to Plaintiff from Defendant stated, "[a]ccording to the information we received, you (sic) provider, Stratford Court of Palm Harbor, meets the policy requirements," "[u]nfortunately, we have received no information of a Hospital confinement of at least three consecutive days within 30 prior to your admission to the facility" and, "[b]ased upon this information, no benefits are payable for the rendered services by Stratford Court of Palm, Harbor." (Doc. 26 at PageID 264).

Plaintiffs Maybelle Smith and Fleming filed this action on behalf of themselves and others similarly situated and brought claims for breach of contract, declaratory judgment, bad faith, violations of the Unfair Claims Settlement Practices Act, unjust enrichment, and punitive damages related to their long-term care insurance policies issued by Defendant. (Doc. 1). Defendant filed a Motion to Dismiss all of Plaintiffs' claims. (Doc. 11). With respect to Plaintiff Smith, applying Ohio law, the Court dismissed all of her claims with prejudice. (Doc. 21). With respect to Plaintiff Fleming, applying Florida law, the Court dismissed her claims for bad faith, unjust enrichment and punitive damages with prejudice; dismissed her claim under the Unfair Claims Settlement Practices Act without prejudice to refiling; and held that her claims for breach of contract, declaratory judgment, and injunctive relief remained at that stage in the proceedings. *Id.* Defendant now moves for summary judgment of Plaintiff Fleming's remaining claims. (Doc. 27).

## II.    STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III.    ANALYSIS

An insurance policy is a contract and interpretation of the language in such a policy constitutes a ruling on a question of law that is an appropriate issue for summary judgment. *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017).  *See Univ. Housing by Dayco Corp. v. Foch*, 221 So. 3d 701, 704 (Fla. Dist. Ct. App. 2017) ("Where the resolution of the issues in the lawsuit depends on the construction and legal effect of a contract, the question at issue is essentially one of law only and determinable by entry of summary judgment.").  Under Florida[2] law, "[i]t is generally accepted that the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract."  *Hassen v. State Farm Mut. Auto. Ins. Co.*, 674 So. 2d 106, 108 (Fla. 1996).  "The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties

---

[2] As the Court's jurisdiction is based on diversity of citizenship, the Court must apply the substantive law of the forum state.  *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  The parties agree that Florida law applies to Plaintiff Flemings's breach of contract claim.

is presumed to apply prospectively." *Metro. Dade Cty, v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 499 (Fla. 1999). "Thus, if a statute attaches new legal consequences to events completed before its enactment, the courts will not apply the statute to pending cases, absent clear legislative intent favoring retroactive application." *Id.*

Chapter 627 of the Florida Insurance Code governs Insurance Rates and Contracts and Part XVIII that Chapter covers Long-Term Care Insurance Policies. Fla. Stat. §§ 627.9401, *et seq.* In 1988, the Florida Legislature created the Long-Term Care Insurance Act.[3] 1988 Fla. Sess. Law Serv. 88-57 (West). At that time, Section 627.9403, entitled "Scope," provided that "the provisions of this part shall apply to long-term care insurance policies delivered or issued for delivery in this state." Fla. Stat. § 627.9403 (1988). Section 627.9407, entitled "Disclosure, advertising, and performance standards for long-term care insurance," provided the following:

(5) PRIOR INSTITUTIONALIZATION.

(a) No long-term care insurance policy which provides benefits only following institutionalization shall condition such benefits upon a length of stay in a facility for a period of time longer than 3 days.

(b) No long-term care insurance policy which provides benefits only following institutionalization shall condition such benefits upon admission to a facility for the same or related conditions within a period of less than 30 days after discharge from the institution.

(c) An entity that advertises, markets, or solicits a long-term care insurance policy in this state which provides benefits only following institutionalization shall also offer to each policyholder, as part of the application, a policy which does not condition benefits upon following institutionalization, subject to an appropriate additional premium, if any.

---

[3] The Act was then found in Part XIX of Chapter 627. *Id.*

Fla. Stat. § 627.9407(5) (1988).  The Florida Legislature stated that the Act "shall take effect October 1, 1988, and shall apply to policies issued or renewed on or after such date." 1988 Fla. Sess. Law Serv. 88-57 (West).

In 1989, the Florida Legislature amended[4] Section 627.9403, to read that "the provisions of this part shall apply to long-term care insurance policies delivered or issue for delivery in this state" and "[t]he provisions of this part. . . shall not apply to guaranteed renewable policies issued prior to October 1, 1988."  Fla. Stat. § 627.9403 (1989).

In 1992, the Florida Legislature amended Section 627.9407 to state that "[a] long-term care insurance policy may not be delivered or issued for delivery in this state if the policy: [] Conditions eligibility for any benefits on a prior hospitalization requirement."  Fla. Stat. § 627.9407(5)(a) (1992).  The 1992 Amendment became "[e]ffective October 1, 1992." 1992 Fla. Sess. Law Serv. Ch. 92-33 (West).

### a.  Effect of the 1989 and 1992 amendments

The Court finds that neither the 1989 amendments to section 627.9403 nor the 1992 amendments to Section 627.9407 alter the prior hospitalization requirement found in Plaintiff's Policy issued on May 1, 1989.  The 1992 statutory amendments to Section 627.9407—eliminating any prior hospitalization requirements in long-term care insurance policies—became "[e]ffective October 1, 1992."  1992 Fla. Sess. Law Serv. Ch. 92-33 (West).  There is nothing in the 1992 amendments indicating that the Florida Legislature intended those amendments to affect guaranteed renewable long-term care insurance policies that existed before October 1, 1992.  Plaintiff concedes this.  (Doc. 33 at PageID 376).  Plaintiff instead argues that any retroactive language in the 1992 amendments would

---

[4] The 1989 amendments took effect on June 28, 1989.  1989 Fla. Sess. Law Serv. 89-239 (West).

6

have been unnecessary "because the Florida Legislature had already expressed its intent regarding the scope of all Part XVIII provisions" in the 1989 amendments to Section 627.9403. *Id.* The Court disagrees.

In the 1989 amendments to Section 627.9403, the Florida Legislature added the language that "[t]he provisions of this part. . . shall not apply to guaranteed renewable policies issued prior to October 1, 1988." Fla. Stat. § 627.9403 (1989). The Court previously found that, "[i]f provisions of this part do not apply to guaranteed renewable policies issued prior to October 1, 1988, it stands to reason that provisions of this part would apply to guaranteed renewable policies issued after October 1, 1988." (Doc. 21 at PageID 221). The staff comments found in legislative history to the 1989 amendment are instructive and state that the Florida Legislature added the additional language to "ensure that the act does not apply to preexisting policies when renewed after the effective date of the act." Fla. Legislature, 1989 Summary of General Legislation at 142 (1989). At this stage in the proceedings, the Court finds that the 1989 amendments to Section 627.9403 stand for the propositions that: (1) the provisions of Part XVIII of Chapter 627 do not apply to guaranteed renewable policies issued before October 1, 1988; (2) the provisions of Part XVIII of Chapter 627 do apply to guaranteed renewable policies issued after October 1, 1988; and (3) the Florida Legislature added the language to clarify that the Long-Term Care Insurance Act did not apply to policies issued prior to October 1, 1988, if those policies were renewed after October 1, 1988.

Nothing in the plain language of the 1989 amendments or the legislative history thereof requires the Court to "harmonize and reconcile" the 1989 amendments to Section 627.9403 and the 1992 amendments to Section 627.9407 to find that "the will of the Florida

Legislature [] mandate[es] that Section 627.9407's prohibition of prior hospitalization requirements be applied precisely as Section 627.9403 dictates—*i.e.*, to all guaranteed renewable long-term care policies except those 'issued prior to October 1, 1988'" (Doc. 33 at PageID 377) despite Section 627.9407(5)'s stated effective date of October 1, 1992. Rather, the Court reads the two amended Sections together to mean that (1) the provisions of Part XVIII of Chapter 627 do not apply to guaranteed renewable policies issued before October 1, 1988, even if those policies are renewed after that date, and the provisions od Part XVIII of Chapter 627 do apply to guaranteed renewable policies issued after October 1, 1988 and (2) as of October 1, 1992, prior hospitalization requirements in long-term care insurance policies were prohibited.

### b. Effect of renewals

The Policy has an effective date of May 1, 1989 but does not have an end date and its term is "annual." (Doc. 12-2). A plain reading of the Policy indicates that the policy ends only if Plaintiff declines to pay her premium. (Doc. 12-2 at PageID 162). Defendant could not cancel the Policy unless Plaintiff stopped paying the premiums and the Policy was guaranteed renewable for the life of Plaintiff. *Id.* Similarly, Defendant could not control if the Policy was renewed so long as Plaintiff paid her premiums. *Id.* Defendant could not change the premium rates unless it gave Plaintiff thirty-one (31) days' notice and changed the rates for all similar long-term care insurance policies in Florida. *Id.* For the foregoing reasons, the Court finds that the Policy was one continuing contract.[5] *See Mann v Unum*

---

[5] Plaintiff's reliance on *Bell Care Nurses Registry, Inc. v. Cont'l Cas. Co.*, 25 So. 3d 13 (Fla. Dist. Ct. App. 2009), a case involving a home health care insurance policy, and other cases involving fixed-term but renewable auto, home, and life insurance policies is less persuasive, as the facts of those cases, including the insurance policies and statutes at issue, are distinguishable from her guaranteed renewable long-term care insurance Policy.

*Life Ins. Co. of America*, No. 2012-CA-003133, 2013 WL 4768660, at *3 (Fla. Cir .Ct. Aug. 30, 2013), *aff'd*, *Mann v. Unum Life Ins. Co. of Am.*, 139 So. 3d 895 (Fla. Dist. Ct. App. 2014) ("The [long-term care] Policies in question were originally issued on December 3, 1998, and each 'renewal' was considered as a continuation of the policy, not as a re-issuance, as evidenced by the contract's language regarding the policy as 'guaranteed renewable;' as well as the conditions for termination.").

### c. Summary

On May 1, 1989, when Plaintiff Fleming applied for the Policy and Defendant issued the Policy, the Florida Insurance Code permitted Defendant to condition reimbursement on a prior hospitalization for a period of time not to exceed three days. Fla. Stat. § 627.9407(5) (1988). Plaintiff's Policy application included a box titled "Prior Hospitalization" and an "X" mark in the corresponding "Yes" box (Doc. 12-2 at PageID 174) and the Policy's terms expressly conditioned receipt of "Hospital confinement of at least three consecutive days" (*id.* at PageID 167). Nothing in either the 1989 amendments to Section 627.9403 or the 1992 amendments to Section 627.9407 changed the reality that, until October 1, 1992, a prior hospitalization requirement for a period of up to three days was legal with respect to guaranteed renewable long-term care insurance policies in Florida. See *Metro. Dade Cty*, 737 So. 2d at 499. *See also Hassen*, 674 So. 2d at 108. The Policy was a single, continuous policy. *See Mann*, 2013 WL 4768660, at *3. Plaintiff admits she was not discharged from a hospital confinement of at least three consecutive days before she entered Stratford Court. (Doc. 1). While sympathetic to Plaintiff and her family, the Court finds that Defendant properly denied her reimbursement claim and summary judgment with respect to Plaintiff's breach of contract claim in Defendant's favor is appropriate.

## IV.    Declaratory and Injunctive Relief

The Court further finds that, in light of Plaintiff Fleming's death and failure of her breach of contract claim, her claims for declaratory judgment and injunctive relief in this matter are moot.  *See Immel v. Lumpkin*, 408 F. App'x 920, 921 (6th Cir. 2010) (requests for declaratory and injunctive relief are moot upon death of plaintiff as she no longer has "a legally cognizable interest in the outcome") (quoting *U.S. v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (additional citations omitted).  The fact that Plaintiff filed this case as a class action suit does not persuade the Court otherwise, as Plaintiff fails to establish that the case meets the two requirements of the inherently transitory exception to mootness. *See Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) ("Where . . . the named plaintiff's claim becomes moot before certification," the ordinary rule is that "dismissal of the action is required.").  *See also Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017) (explaining that for the "inherently transitory" exception to apply the injury must be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification *and* it must be clear that other class members are suffering the injury).

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant Continental Casualty Company's Motion for Summary Judgment (Doc. 27) is **GRANTED**.   This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**                    _s/ Michael R. Barrett_____
                                          Michael R. Barrett, Judge
                                          United States District Court